BURKHARD SIMON v. ROBERT BROWN, HENRY LEIK AND THEODORE DROSTE.

*Agency—Bona fide encumbrance.*

One who knows that another is collecting money on his contract and does not object, but allows him to keep it as a loan, makes him his agent to collect it.

One who advanced money without security to enable another to purchase land which he had reason to believe was sold in fraud of the rights of a former contract purchaser, was *held* to be without any equities as a *bona fide* encumbrancer on the land to secure his loan.

Appeal from Clinton. Submitted Feb. 1. Decided April 3.

BILL TO COMPEL THE CONVEYANCE OF TITLE. Defendant Droste appeals.

*Spaulding & Cranson* for complainant.

*Bartow & Fedewa* for defendants.

CAMPBELL, C. J.    Simon brings his bill of complaint to obtain a title to the northeast quarter of the southeast quarter of section 30, of town six north of range four west in Clinton county.

Brown the original owner, then and now living in Monroe county, New York, sold the east half of the southeast quarter of section 30 to one Engelbert Esch, in the early part of the year 1867, by written contract dated March 15, 1867, for $850, payable $150 down and the balance, as alleged in the answer, to be paid in two annual installments.    Brown having obtained the possession of the contract, and refusing to produce it, the precise terms of it are not shown, but they are not now very material.

On the 26th of January, 1869, Esch sold the north forty acres to complainant by warranty deed for $575, of which $450 was to be paid on the contract of Esch. This was paid to Joseph Platte, an agent of Brown, partly by direct payment, and partly by payment to Andrew Webber by arrangement with Platte.    Platte received full payment of all the money due to Brown in this way.

Brown claims Platte was not his agent for receiving money.    The testimony shows clearly that while Platte probably deceived him as to the amounts of money received, Brown knew that he was collecting money on the contracts and allowed him to keep it as a loan, and did not object to his collecting it.    The agency is clear.

In May, 1873, complainant procured a letter to be written to Brown, enclosing the deed from Esch to complainant, and asking what further claims, if any, Brown had on the land.    To this Brown made no reply, although he received it.    Several months thereafter complainant had another letter sent asking similar information, and

a return of the deed. Of this Brown took no notice, and kept the deed.

In the beginning of 1874 one Hengsbach, who knew all about complainant's rights and had helped him in his original purchase, entered into an arrangement with Brown for getting title to the entire Esch purchase. Esch was dead, and Platte had gone away, as Brown claims, without paying him. There is some mystery about the facts, but it would seem that Brown agreed, if the Esch contract could be procured and got out of the way, to sell the property to Hengsbach for the first contract price. Proofs were given of Esch's death, and possession was in some way obtained of Esch's copy of the contract which was put in Brown's hands. Thereupon, on the payment or pretended payment of $850, Brown made a conveyance, dated in January but executed in May, 1874, to one Anton Pulte of the entire eighty acres. Pulte was not sworn in the cause, although his connection with the facts became important, and if he purchased in good faith, his title would have ended this controversy as to Droste the appellant.

Pulte is said to have furnished the money to Hengsbach to go to New York and purchase the land. There is no evidence that Pulte did anything more than lend money without security to Hengsbach. He is not shown to have made any bargain or stipulation for the purchase of the land, or to have taken any part or had any active interest in the matter. At Hengsbach's suggestion the deed was taken in Pulte's name, but delivered to Hengsbach and recorded by him. At the utmost Pulte may have had some understanding that he should be secured by Hengsbach on this land if purchased, but he was entirely passive, made no inquiry and took no part.

Subsequently Hengsbach bargained the land to one Henry Leik, who was also fully aware of complainant's rights. Leik borrowed money of Droste and paid Pulte, who conveyed to Leik on the 4th of November, 1874.

Leik by mortgage dated November 2, 1874, but acknowledged November 11, 1874, mortgaged the land to Droste to secure $1200. Droste did not lend the money on the faith of this land, although he expected a mortgage to be made for the loan, which was advanced without any present security upon the promise of a future one. Droste had heard there were difficulties about Simon's rights. He, like Pulte, paid no attention to the title and acted evidently in reliance on the good faith of the persons with whom he dealt.

There is no evidence of personal dishonesty in Pulte or Droste, who, however, can in no way be regarded as bona fide purchasers or encumbrancers, inasmuch as neither of them relied on the title as a foundation of their action, and Droste at least had enough knowledge to put him on inquiry. Pulte had actual knowledge before he got his deed; and as his money was advanced before there was any purchase at all, he simply trusted to Hengsbach in the first instance and cannot be said to have paid for the land in good faith relying on any title. He was not only ignorant, but entirely passive and without care or thought concerning his security. He took what the parties chose to give him. His indifference negatives dishonesty, but creates no equities.

As to the other parties the fraud is too open to bear discussion. A plainer case of dishonesty can hardly be imagined. The defendants Leik and Droste may have supposed, in ignorance of law, that they were justified in purchasing. Brown's course as both party and witness admits of no excuse. The fraud is beyond dispute.

The decree must be affirmed with costs.

The other Justices concurred.